PAULSEN v BUREAU OF STATE LOTTERY

Docket No. 94989. Submitted December 8, 1987, at Lansing. Decided
  March 21, 1988. Leave to appeal applied for.

In 1984, Donald Paulsen purchased a LOTTO subscription by
  sending in the application form and a check for $50. At that
  time, LOTTO drawings were held once weekly, on Saturdays, and
  for $50 subscribers could get a LOTTO number good for fifty-two
  LOTTO drawings. Paulsen received his subscription ticket, which
  showed a beginning date of December 10, 1984, and an ending
  date of November 23, 1985. On August 23, 1985, the format of
  the LOTTO was converted to twice-weekly drawings with draw-
  ings occurring on Wednesdays and Saturdays each week. Dur-
  ing the period of August 7 through August 12, 1985, the
  Bureau of State Lottery sent notice by first-class mail to all
  subscribers at their subscription addresses informing them of
  the change in the format. Paulsen, having moved, never re-
  ceived notice of the change. On Saturday, October 26, 1985,
  Paulsen's number matched the winning LOTTO numbers. Paul-
  sen called the Bureau of State Lottery stating that he was the
  holder of a subscription ticket which matched the numbers
  drawn on October 26, 1985. The bureau informed him that his
  subscription had expired on October 9, 1985, because of the
  change of the format of the LOTTO. Paulsen filed suit against
  the Bureau of State Lottery in the Court of Claims alleging
  breach of contract. The bureau in turn filed a declaratory
  judgment action against the three other holders of winning
  tickets for the October 26, 1985, drawing in Ingham Circuit
  Court. The cases were consolidated in Ingham Circuit Court.
  Paulsen's position at trial was that the subscription contract
  explicitly provided for fifty-two weeks of Saturday drawings
  with a starting date of December 1, 1984, and an ending date of
  November 23, 1985, and that the ending date on his ticket was

REFERENCES

Am Jur 2d, Contracts § 192.
Am Jur 2d, Gambling §§ 5-10, 57 et seq.; 264 et seq.
State lotteries: actions by ticketholders against state or contractor
  for state. 40 ALR4th 662.
"Unconscionability" as ground for refusing enforcement of contract
  for sale of goods or agreement collateral thereto. 18 ALR3d 1305.

a binding contractual term which could not be unilaterally changed by the bureau. The bureau maintained that the ending date on the ticket was an expected ending date, primarily to inform the subscriber when to renew the subscription, that the contract provided for modification of game rules, and that, by entering Paulsen into fifty-two consecutive LOTTO drawings, the bureau fulfilled its contractual obligations. The court, Robert Holmes Bell, J., granted summary disposition in favor of the bureau. Paulsen appealed.

The Court of Appeals *held:*

1. A lottery winner's entitlement to a prize is governed by principles of contract law.

2. The subscription contract at issue does not mention the words "year" or "weeks" or any other period of time. Thus, Paulsen's subjective expectation that he contracted with the bureau for fifty-two Saturday drawings only is without merit. Further, the contract clearly states that subscription memberships were subject to the rules, regulations, and directives of the bureau and any changes thereof. The change in drawings was not a change in the contract, but a change in the game rules. Paulsen's argument that the bureau made a unilateral modification of the contract therefore is also without merit.

3. The "any changes thereof" clause in the subscription contract is not unconscionable.

4. The ending date of November 23, 1985, on Paulsen's subscription ticket was a matter of convenience so that Paulsen could renew his subscription if he chose to do so, not a contractually binding ending date.

Affirmed.

1. LOTTERIES — CONTRACTS — ENTITLEMENT TO PRIZE.

A lottery winner's entitlement to a prize is governed by the principles of contract law.

2. LOTTERIES — SUBSCRIPTIONS — ENDING DATES — CHANGES IN GAME FORMAT.

A person who purchased a LOTTO subscription for fifty-two drawings at a time when drawings were held once a week, on Saturday, was entitled to participate in fifty-two consecutive drawings, and a change in the format of the game to twice-weekly drawings entitled him to participation in all drawings, not just the Saturday drawings; the ending date on his subscription ticket showing an ending date beyond the occurrence of the fifty-second drawing after the beginning date was not a binding contractual term but merely a reminder to the purchaser as to when to renew his subscription where subscription

memberships were subject to the rules, regulations and directives of the Bureau of State Lottery and any changes thereof.

3. CONTRACTS — UNCONSCIONABLE CONTRACTS.

A two-pronged test is applied for determining whether a contract is unenforceable as unconscionable: the first prong measures the relative bargaining power of the parties, the second prong is a determination of whether a challenged term is substantively reasonable; even if a contract is one of adhesion under the first prong, a challenged provision remains enforceable if it is substantially reasonable and not oppressive or unconscionable.

*Charles A. Fleck,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Charles D. Hackney,* Assistant Attorney General, for defendant.

*Mansour, Rizik & Cronin, P.C.* (by *George F. Rizik II),* for intervening defendant-appellee Anthony Q. Beavers.

Before: DANHOF, C.J., and SHEPHERD and C. L. BOSMAN,* JJ.

SHEPHERD, J. Plaintiff appeals from a July 16, 1986, entry of summary disposition by the Ingham Circuit Court in favor of defendant Bureau of State Lottery and intervening defendants. We affirm.

The facts are not substantially in dispute. This controversy involves plaintiff's entitlement to a share in an October 26, 1985, LOTTO drawing involving $3,601,554. In 1984, plaintiff applied for and purchased nine LOTTO subscriptions from defendant. For each subscription to defendant's LOTTO game, an application was submitted on a Bureau of State Lottery subscription mailer form. The particular application at issue here was re-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ceived by defendant along with a check in the amount of $50. Under the "pick your plan" section of the application plaintiff was supposed to indicate whether he wanted ten drawings for $10, twenty-six for $25 or fifty-two drawings for $50. Plaintiff did not fill out the "pick your plan" section and state personnel treated the application as one for fifty-two drawings and circled that designation.

In November, 1984, plaintiff received a membership card from defendant indicating his LOTTO number 03 05 08 17 26 30. The membership card also indicated a beginning date of December 10, 1984, and an ending date of November 23, 1985. It was the position of defendant that the "ending date" was an "expected ending date" for the convenience of the player, primarily to give the player the information as to the time to renew the subscription. The ending date of the membership was based on the number of drawings as indicated in the member's application. Plaintiff's position was that the ending date was a binding contractual term which could not be unilaterally changed.

As originally established, LOTTO was a weekly draw game with drawings held on Saturday evenings. The details of the game were the subject of a directive issued by the Commissioner of the Bureau of State Lottery and placed on file with the office of the Secretary of State. On August 23, 1985, the format of the LOTTO was converted to twice-weekly drawings with drawings occurring on Wednesday and Saturday evenings each week.

During the time of August 7 through August 12, 1985, notices were sent by first class mail to all subscribers at their subscription addresses informing them of the forthcoming change to twice-weekly drawings. All subscribers were mailed a new membership card in conjunction with a notifi-

cation indicating a beginning date and the number of drawings, rather than the expected ending date. Plaintiff's notice and replacement membership cards were mailed to plaintiff's Friendswood, Texas, post office box address. On January 3, 1986, these materials were returned to defendant stamped "BOX CLOSED—LEFT NO ORDER." Plaintiff had relocated his address from Texas to Greensboro, North Carolina, on or about June 1, 1985. Plaintiff took no action to inform defendant of his change of address because plaintiff continued to receive mail through the Friendswood, Texas, postal box. Plaintiff never received notification of the new twice-weekly drawings.

On the basis of defendant's interpretation of the subscription, plaintiff was entered into fifty-two consecutive LOTTO game drawings from December 1, 1984, through October 9, 1985. In total plaintiff was entered into forty-five Saturday drawings and seven Wednesday drawings.

On Saturday, October 26, 1985, the winning LOTTO numbers were drawn as 03 05 08 17 26 30. The jackpot prize pool for the October 26, 1985, LOTTO drawing was calculated to be $3,601,554. Following the drawing, intervening defendants each appeared at the Lansing office of the Bureau of State Lottery and presented sufficient identification entitling each to win one-third of the LOTTO jackpot prize.

On October 28, 1985, plaintiff called defendant stating that he was the holder of a subscription which matched the six numbers drawn on the previous Saturday. Plaintiff was informed that his subscription had expired on October 9, 1985, and that notice had been mailed to him in mid-August indicating the change in the format of the LOTTO drawing. Plaintiff later appeared at defendant's offices and filed a claim form for one-fourth of the

share of the jackpot prize pool and later notified defendant in writing of his refusal to consent to what he termed a unilateral change of the LOTTO contract term.

On November 20, 1985, plaintiff filed a complaint against defendant in the Court of Claims alleging breach of contract. A declaratory judgment action was later filed in Ingham Circuit Court against intervening defendants by defendant bureau. The cases were ultimately consolidated in Ingham Circuit Court. All parties moved for summary disposition and on July 16, 1986, at the conclusion of the hearing, summary disposition in favor of defendant was granted.

Plaintiff argues that the LOTTO subscription contract entered into with defendant explicitly provided for fifty-two weeks of Saturday drawings with a starting date of December 1, 1984, and an ending date of November 23, 1985. Plaintiff claims defendant breached the LOTTO contract by unilaterally entering plaintiff into biweekly drawings and modifying the ending date without plaintiff's consent or consideration. Defendant counters that the contract provided for modification of game rules and that, by entering plaintiff into fifty-two LOTTO drawings, defendant fulfilled its contractual obligations.

MCL 432.1 *et seq.;* MSA 18.969(1) *et seq.* establishes a Bureau of State Lottery and the office of commissioner, designated to initiate, establish and operate a statewide lottery game for the purpose of deriving net revenues for the state treasury. MCL 432.9; MSA 18.969(9). In MCL 432.11; MSA 18.969(11), the act further provides in relevant part:

(1) The commissioner shall promulgate rules in accordance with and subject to Act No. 306 of the

Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, except to implement section 9 the rules are not subject to Act No. 306 of the Public Acts of 1969, as amended, for 18 months after the effective date of this act but shall be promulgated and effective as determined by the commissioner.

(2) The rules may include:

\* \* \*

(f) The frequency of the drawings or selections of winning tickets or shares.

Under the act, a lottery winner's entitlement to a prize is governed by principles of contract law. *Coleman v Bureau of State Lottery,* 77 Mich App 349, 351; 258 NW2d 84 (1977), lv den 402 Mich 837 (1977). In *Coleman* this Court held that, in purchasing her lottery ticket, the plaintiff accepted the bureau's public offer that the purchaser of a lottery ticket would have a chance of winning a prize according to the advertised rules and procedures of the lottery and the plaintiff agreed to the announced rules for determining prize winners.

In the instant case, a determination of the issue requires construction of the LOTTO subscription contract entered into by the parties. The LOTTO subscription application executed by plaintiff provides that the subscriber pick six numbers from one to forty for an opportunity to share in the jackpot prize pool. The contract further provides for a guaranteed minimum jackpot prize pool of $1,000,000 per drawing. A subscriber was instructed to "pick your plan" and, by mailing a $50 check to defendant, plaintiff selected the option indicating "52 drawings." The contract also provided:

Allow at least three weeks for processing.
Subscription memberships will be *effective as of*

> *the starting date indicated on the membership card.*
>
> Refunds will not be granted once a membership card has been issued.
>
> *Subscription memberships are subject to the rules, regulations, and directives of the Bureau of State Lottery and laws of the State of Michigan and any changes thereof.* [Emphasis added.]

At the time of plaintiff's subscription, LOTTO was a weekly draw game with drawings taking place on Saturday evenings. The LOTTO subscription contract, however, did not mention that drawings were to be held weekly nor does the contract provide for Saturday drawings. Further, the contract nowhere mentions the words "year" or "weeks" or any other period of time. Thus, plaintiff's subjective expectation that he contracted with defendant for fifty-two Saturday drawings only is without merit. Further, the contract clearly stated that subscription memberships were subject to the rules, regulations, and directives of defendant Bureau of State Lottery "and any changes thereof." Plaintiff's subscription membership card contained identical language. Plaintiff is bound by the plain language regarding changes in the rules, regulations and directives of defendant Bureau of State Lottery. The change from one drawing per week to two drawings per week effective August 28, 1985, was the result of a change in a general directive of the bureau. As such, this change was binding on plaintiff's subscription.

The change to twice-weekly drawings was not a change in the subscription contract, but rather a change in the game rules from which the subscription contract was a mode of participation. Thus, plaintiff's argument that defendant made a unilateral modification of the contract is without merit.

Plaintiff also argues, in the alternative, that the

"any changes thereof" clause is unenforceable as unconscionable. A two-pronged test has been applied by this Court in determining whether a contract is unenforceable as unconscionable. The first prong of the test measures the relative bargaining power of the parties, in short, measuring the options of those parties. The second prong of the test is a determination of whether a challenged term is substantively reasonable. See *Stenke v Masland Development Co, Inc*, 152 Mich App 562, 572-573; 394 NW2d 418 (1986). Even if a contract is one of adhesion under the first prong, a challenged provision remains enforceable if it is substantially reasonable and not oppressive or unconscionable. See *Stenke* at 573.

Although we are not entirely convinced that defendant's bargaining power is vastly superior to plaintiff's given the plethora of games of chance in surrounding states and the number of lottery games operated by this state, under the second prong the clause is entirely reasonable. The rule change, taking effect in August, 1985, was prospective in operation and affected all lottery customers. Furthermore, all subscription purchasers were notified by mail. The clause was not unconscionable.

Finally, plaintiff relies heavily on the membership card as evidencing the "ending date" of November 23, 1985. The subscription contract makes reference to a "membership card" which was to provide the effective starting date of the contract. The contract provides only for a plan of fifty-two drawings. Plaintiff received the benefit of his bargain, i.e., fifty-two consecutive drawings. The "ending date" was provided as a matter of convenience so that plaintiff would be able to renew his subscription if he chose to. Plaintiff's position causes

us to pose the following hypothetical situation. If plaintiff's LOTTO subscription number had been the jackpot number on a Wednesday between August 23, 1985, and October 9, 1985, would plaintiff be required to return the money since, as he claims, he had contracted for fifty-two consecutive *Saturday* drawings? Would his co-winners be entitled to maintain a suit to exclude plaintiff from the jackpot prize? We ask these questions rhetorically to point out the problem with plaintiff's interpretation of the contract.

We affirm the lower court's summary disposition in this matter in favor of the defendant bureau.