**Rosalind BEAUCHAMP, Plaintiff,**

v.

**GREAT WEST LIFE ASSURANCE COMPANY, a corporation, and Great West Life & Annuity Insurance Company, a corporation, Jointly and Severally, Defendants.**

**Civil Action No. 95–40357.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 26, 1996.

Steven H. Schwartz, Dykema Gossett, P.L.L.C., Detroit, MI, for Great West Life & Annuity Ins. Co.

Michael L. Pitt, Pitt, Dowty & McGehee, Royal Oak, MI, for Rosalind Beauchamp.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

GADOLA, District Judge.

Plaintiff brought this ADEA and Title VII suit,[1] alleging that defendants had discriminatorily fired her because of her age and gender. Defendants now bring the present motion to compel arbitration and/or to dismiss. Pursuant to Local Rule 7.1(e)(2), the court has dispensed with oral argument and will decide the present motion based on the written submissions of the parties. For the reasons stated below, this court will grant the defendants' motion to compel arbitration.

### I. Factual Background

Plaintiff began working for the defendants as an insurance salesperson on May 17, 1976. In 1984, plaintiff signed a Uniform Application for Securities Industry Registration (hereinafter "U–4 form"), which states:

> THE FOLLOWING SHOULD BE READ VERY CAREFULLY BY THE APPLICANT
>
> . . . . .
>
> 5. I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register. . . .

Plaintiff registered with the National Association of Securities Dealers (hereinafter "NASD"). Part I of the NASD Code of Arbitration Procedure states that the code was created "for the arbitration of any dispute, claim. or controversy arising out of or

---

**1.** Plaintiff's initial complaint also included state law claims over which this court declined to exercise supplemental jurisdiction.

in connection with the business of any member of the Association...." This code mandates arbitration of:

any dispute, claim, or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), ... at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and,

(3) a person associated with a member against a person associated with a member.

Plaintiff asserts that she was informed that she had to sign the U–4 form to keep her employment and that she does not remember reading the previously quoted language from the U–4 form. The completed U–4 form was not kept in plaintiff's personnel file in Michigan, but rather at defendants' headquarters in Denver, which oversees compliance with licensing requirements.

Plaintiff alleges in her complaint that she was repeatedly passed over for promotion because of her gender and age. She resigned on January 5, 1995, allegedly the result of a constructive discharge by the defendants. She then brought a complaint before the EEOC and subsequently filed the present lawsuit in September, 1995.

## II. Analysis

Defendants argue that plaintiff is compelled to arbitrate this action pursuant to the Federal Arbitration Act and the NASD Code of Arbitration Procedure. The Federal Arbitration Act states, in part:

[A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon the

grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section four of the FAA allows the court to compel arbitration when one party fails to comply with an arbitration agreement.[2] Defendants mainly rely on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991) in arguing that the FAA and the NASD arbitration agreement apply to plaintiff's ADEA and Title VII claims.

In *Gilmer*, the Supreme Court held that an ADEA claim could be sent to arbitration when the plaintiff agreed to arbitration under a "Uniform Application for Securities Industry Registration or Transfer," containing the same language regarding arbitration as the U–4 form in the present case. The Court noted that the FAA "provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25, 111 S.Ct. at 1651 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). The Court then stated:

[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.

Although all statutory claims may not be appropriate for arbitration, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue...." If such an intention exists, it will be discoverable in the text of the ADEA, its legislative history, or an "inherent conflict" between arbitration and the ADEA's underlying purposes.

*Id.* at 26, 111 S.Ct. at 1652 (citations omitted). The Court then examined the text, history, and underlying policies of the ADEA and concluded that there was no inherent

---

**2.** Although the FAA does not apply to certain employment contracts, that exception does not apply in the present case because the arbitration agreement in the case at bar is not within an employment contract, but rather within an agreement between the plaintiff and NASD. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991); *Willis v. Dean Witter Reynolds, Inc.* 948 F.2d 305, 310–12 (6th Cir.1991).

conflict between the enforcement of the ADEA and the enforcement of agreements to arbitrate age discrimination claims.

In *Willis,* the Sixth Circuit extended the holding of *Gilmer* to Title VII actions:

> The Supreme Court [in *Gilmer*] ... held that nothing in the ADEA or its legislative history suggested that the arbitration clause in the Securities Registration Form should not be enforced under the FAA. We find that the Court's analysis and conclusions in *Gilmer* compels the conclusion that the FAA and arbitration provisions of the Securities Registration Form apply equally to ... Title VII claims....

*Id.* at 307.

Defendants argue that these two cases demonstrate that the arbitration provision in the present case, being identical to the provisions at issue in *Gilmer* and *Willis,* applies to the plaintiff's claims and is enforceable under the FAA. Plaintiff disagrees, citing four reasons: (1) plaintiff did not knowingly agree to arbitrate because she was not aware of the arbitration clause and its application to Title VII and ADEA claims when she signed the U–4 form; (2) the contract is an adhesion contract under Michigan law and cannot be enforced; (3) defendants, under M.C.L. 423.502 have waived their right to enforce the arbitration clause because they did not keep the uniform application in plaintiff's personnel file; and (4) defendants have waived their right to enforce the arbitration clause because they did not do so in at least one other, similar case. These arguments will be addressed in turn.

## A. Requirement of Actual Knowledge of Arbitration Clause

Plaintiff argues that in order for the arbitration clause to be enforceable, she must have known about the arbitration clause and its application to her claims in the present action. She claims not to have been informed about the arbitration clause and therefore asserts that she did not knowingly relinquish her rights to a judicial forum for employment discrimination claims when she signed the U–4 form.

Plaintiff relies on the Ninth Circuit case of *Prudential Ins. Co. v. Lai,* 42 F.3d 1299 (9th Cir.1994), which held that a plaintiff who signed a U–4 form to register with the NASD could only be held to the arbitration clause contained therein if he *knowingly* agreed to arbitrate his particular employment discrimination claims. The Ninth Circuit held that "Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies, and procedural protections prescribed in Title VII...." *Id.* at 1304.

In reaching this conclusion, the *Prudential* court relied in part on one of the House Reports to the Civil Rights Act of 1991 that stated:

> Section 216 [of the 1991 Act] encourages the use of alternative dispute resolution ... where appropriate and to the extent authorized by law.... The committee emphasizes ... that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII. This view is consistent with the Supreme Court's interpretation of Title VII in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] ... (1974). The committee does not intend for the inclusion of this section to be used to preclude rights and remedies that would otherwise be available.

*Id.* at 1304 (quoting HR Rep.No. 40(I) 102nd Cong. 1st Sess., reprinted in U.S.C.C.A.N. 549, 635). The court also noted statements made by Senator Dole that the arbitration provision of the Civil Rights Act of 1991 encourages arbitration "where the parties knowingly and voluntarily elect to use these methods." *Id.* at 1305 (quoting 137 Cong. Rec.S. 15472, S. 15478 (Daily Ed. October 30, 1991)). The *Prudential* court heavily cited

to *Alexander v. Gardner–Denver*,[3] 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and its progeny. In particular, the Ninth Circuit quoted, in part, the following language from *Alexander*:

> [L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination.... Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. And, in general, submission of a forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement.

*Alexander*, 415 U.S. at 49–50, 94 S.Ct. at 1019–20.

In reviewing the facts of its case, which are similar to the facts of the present case, the *Prudential* court refused to enforce the arbitration clause in the U–4 form because the plaintiffs did not knowingly waive their right to a judicial forum; even if the plaintiffs were aware of the clause, the clause did not notify the plaintiffs that employment discrimination claims would fall within the scope of the clause.

Fortunately, *Prudential* is not binding precedent because this court is not persuaded by its reasoning. The portions of the legislative history relied upon by the Ninth Circuit are slender reeds upon which to rest the weighty and novel conclusion that an arbitration clause is only binding when the claimant has actual knowledge that his particular employ-

ment discrimination claims will be covered by the agreement. This conclusion flies in the face of the language of the Civil Rights Act of 1991, the Supreme Court's opinion in *Gilmer*, and fundamental principles of contract law.

■ To begin with, the House Report quoted in *Prudential* merely states that an agreement to arbitrate found in an employment contract or in a collective bargaining agreement will not preclude a Title VII action. The House Report essentially restates the holding in *Alexander*, a case that was distinguished in *Gilmer*. As is evident from the above-quoted language in *Alexander*, the *Alexander* opinion held that agreeing to arbitrate the issue of employment discrimination allegedly in violation of an antidiscrimination clause in a collective bargaining agreement does not preclude a later Title VII suit in federal court. This is because Title VII was meant to work in combination with other prohibitions of discrimination, whether they be collective bargaining agreements, federal administrative regulations, or state laws. Use of those other authorities will not preclude later use of Title VII. *Alexander* does not speak to the issue of when a plaintiff may contractually agree to forego a judicial forum for her Title VII claim. This was made clear in *Gilmer*:

> There are several important distinctions between the Gardner–Denver line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants

---

**3.** In *Alexander,* the Court held that an arbitration clause in a collective bargaining agreement could

not preclude a Title VII suit.

there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625 [105 S.Ct. 3346, 3353; 87 L.Ed.2d 444] (1985). Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.

*Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657.

Additionally, the *Prudential* court unjustly attacks the validity of the procedures of the arbitral forum by stating that "[a]lthough the Supreme Court has pointed out that plaintiffs who arbitrate their statutory claims do not 'forego the substantive rights afforded by the statute,' *Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct. at 3354–55, the remedies and procedural protections available in the arbitral forum can differ significantly from those contemplated by the legislature." *Prudential*, 42 F.3d at 1305. The Ninth Circuit then concluded that the lack of a civil jury and the lack of a rule precluding the admission of plaintiff's sexual history (a California rule of evidence) "may be particularly significant" in the sexual harassment context. *Id.* at 1305 & n. 4. Apparently, the Ninth Circuit believed that Congress was so concerned with these potentially "significant" differences in procedure, that it meant for arbitration agreements to be enforced in employment discrimination cases only when it could be shown that the plaintiff had actual knowledge of the scope of the arbitration agreement to which he was agreeing.

The court fails to explain, in the total absence of Congressional reference to the California rule of evidence, why it believes Congress contemplated the use, in *federal* Title VII actions, of a *California* rule of evidence barring the admission of past sexual

history. Even if Congress did contemplate the use of such a rule, there is no evidence that Congress felt that the absence of such a rule in an arbitral forum was so critical as to override Congress's express statements in favor of arbitration in the FAA and the Civil Rights Act of 1991.[4]

Similarly, the court fails to explain why it believes Congress has a preference for trying Title VII actions before a civil jury, rather than an arbitral panel. This, too, is contrary to language in the FAA and the Civil Rights Act of 1991. This assumption also ignores the following statement by the Supreme Court in *Gilmer*:

> [G]eneralized attacks on arbitration "res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," and as such, they are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes."

*Gilmer*, 500 U.S. at 30, 111 S.Ct. at 1654 (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989)).

Lastly, the Ninth Circuit's opinion fails to consider that Congress would be unlikely to turn a venerable rule of contract law on its ear without an express statement that it was doing so.

> It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions. . . .
>
> The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge . . . in the absence of circumstances fairly excusing his failure to inform himself.

---

4. The *Prudential* court recognizes that Congress expressly stated, in the notes to 42 U.S.C. § 1981, that " 'Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolutions including, . . . arbi-

tration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.' § 118 of Pub.L. 102–166, set forth in the notes following 42 U.S.C. § 1981 (Supp.1994)." *Prudential*, 42 F.3d at 1304.

*Scholz v. Montgomery Ward & Co.,* 437 Mich. 83, 92, 468 N.W.2d 845 (1991). *See, e.g.,* 17A Am.Jur.2d Contracts § 224 (1991), and cases cited therein. The Ninth Circuit's rule that a party to an arbitration agreement is *not* chargeable with knowledge concerning the existence and scope of that agreement with respect to Title VII claims is directly contrary to this well-settled rule of contract law.

Lastly, other courts have chosen not to treat *Prudential* as persuasive. *See Maye v. Smith Barney Inc.,* 897 F.Supp. 100, 107 (S.D.N.Y.1995), and cases cited therein.

■ Accordingly, this court chooses not to treat *Prudential* as persuasive precedent, instead holding, consistently with *Gilmer,* that a party is generally chargeable with knowledge of the existence and scope of an arbitration clause within a document signed by that party, in the absence of fraud, deception, or other misconduct that would excuse the lack of such knowledge.

## B. Enforceability of the Arbitration Agreement

Plaintiff argues that the U–4 form was an unreasonable contract of adhesion and, thus, may not be enforced against her. Plaintiff claims that the contract is unenforceable because it was drafted by one party and presented to the other party under circumstances in which there is no realistic opportunity to negotiate. Plaintiff alleges that she had to sign the U–4 form as a condition of her employment although there was no need for her to register with the NASD to properly perform her job.

■ *Gilmer* recognized that "fraud or overwhelming economic power" could provide grounds for the revocation of an agreement to arbitrate and that such issues should be "left for resolution in specific cases." *Gilmer,* 500 U.S. at 33, 111 S.Ct. at 1656. Under Michigan contract law, "[c]ontracts of adhesion are characterized by standardized forms prepared by one party which are offered for rejection or acceptance without opportunity for bargaining and under the circumstances that the second party cannot obtain the desired product or service except by acquiescing in the form agreement." *Morris v. Metriyakool,* 418 Mich. 423, 440, 344 N.W.2d 736 (1984). However, "even if a contract is one of adhesion ..., a challenged provision remains enforceable if it is substantially reasonable and not oppressive or unconscionable." *Paulsen v. Bureau of State Lottery,* 167 Mich.App. 328, 336, 421 N.W.2d 678 (1988).

■ First, this court is not convinced that the U–4 form was a contract of adhesion. The form was not prepared by the defendants, it is a standard form used across the country for anyone who wishes to register with a securities organization. Further, there is no evidence that the plaintiff could not have worked as an insurance salesperson without signing such a form. Even if she couldn't have worked for defendants, she very well may have been able to work elsewhere. Under plaintiff's theory, practically every condition of employment would be an "adhesion contract" which could not be enforced because it would have been presented to the employee by the employer in a situation of unequal bargaining power on a "take it or leave it" basis. *See Gilmer,* 500 U.S. at 33, 111 S.Ct. at 1655 ("there often will be unequal bargaining power between employers and employees. Mere inequality of bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.")

■ Second, the U–4 form is substantially reasonable and not oppressive or unconscionable. The *Gilmer* court has held that plaintiff is not giving up substantive statutory rights through arbitration of her Title VII claim. *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652. Thus, her agreement to arbitrate is not substantively unconscionable. Nor is the language of the U–4 form unconscionable in that it misrepresents the existence or scope of the arbitration clause. The U–4 form clearly states that the applicant should read its provisions very carefully and that *any* claim between plaintiff and her firm would be arbitrated if required by the arbitration code of the organization with which she registered. Plaintiff does not say that she did not read this language, merely that she does not

remember reading this language. In sum, there is no evidence of any fraud or deception concerning the existence or scope of the arbitration clause in the U–4 form that would excuse the plaintiff from enforcement of that clause. If plaintiff did not make herself aware of the existence or scope of that clause, she did so at her own peril.

## C. Application of the Bullard–Plawecki Employee Right To Know Act

Under M.C.L. 423.502 (the Bullard–Plawecki Employee Right To Know Act):

Personnel record information which was not included in the personnel record but should have been as required by this act shall not be used by an employer in a judicial or quasi judicial proceeding. However, personnel record information which, in the opinion of the judge in a judicial proceeding ... was not intentionally excluded in the personnel record, may be used by the employer in the judicial ... proceeding, if the employee agrees or if the employee has been given a reasonable time to review the information.

 Plaintiff believes that the U–4 form is barred by M.C.L. 423.502 because it was kept in the defendants' corporate headquarters in Denver, Colorado, not in their local office with the rest of her employment files and because the U–4 form was not produced to the plaintiff at the same time as her local employment file. Simply because the U–4 form was not kept in the local office, it was still a part of plaintiff's personnel record and there is no evidence that it was unavailable to the plaintiff upon request. While it was not produced at the same time as those portions of plaintiff's personnel record that were stored locally, it was produced on November 6, 1995, when defendants filed this motion. There is no evidence that defendants were attempting to keep plaintiff from viewing the U–4 form. Accordingly, this court holds that the U–4 form may be used in this proceeding. Such a holding is consistent with the purpose of M.C.L. § 423.502, viz., to promote an employee's ability to examine her personnel records, because there is no evidence that the U–4 form was in any way intentionally withheld from plaintiff, who, having signed the form, was certainly aware of its existence.

## D. Equitable Estoppel

 Plaintiff also argues that defendants may not enforce the arbitration clause in the U–4 form because it has not used it to compel arbitration in other employment discrimination cases. This argument is spurious, at best. While it is true that a party may be estopped from making contradictory statements of fact within a single proceeding, or even in separate proceedings,[5] or may be estopped from taking contradictory positions in separate proceedings,[6] there are no such contradictory statements of facts or positions in the present case. The only statement of fact being made by the defendants here is that plaintiff signed the U–4 form. That fact was not contradicted by the defendants in other discrimination cases. There is no contradiction created by defendants' motion to compel arbitration in this case, even though defendants have not so moved in other, similar cases.[7] There is no requirement that defendants must move to compel arbitration in every employment discrimination case in which an employee signed a U–4 form. Plaintiff can cite no case law in support of this position.

For the foregoing reasons, this court rejects plaintiff's arguments. Plaintiff has signed an agreement to arbitrate claims such as this and she will be held to that agreement. This holding is consistent with contract law, the FAA, Title VII, and the Supreme Court's decision in *Gilmer*.

---

**5.** *See Hassberger v. General Builders Supply Co.,* 213 Mich. 489, 182 N.W. 27 (1921); *Soltis v. First of America Bank–Muskegon,* 203 Mich.App. 435, 513 N.W.2d 148 (1994).

**6.** *See, McMaster v. Teledyne Pine,* 838 F.Supp. 331 (E.D.Mich.1993).

**7.** There is no contradiction in defendants' positions because in the other cases in which defendants have not moved to compel arbitration, they have taken no position on the arbitrability of the claims. Certainly defendants were not arguing that arbitration could not be compelled under the U–4 form in the other cases.

### *ORDER*

Therefore, it is hereby **ORDERED** that defendants' motion to compel arbitration and/or to dismiss be **GRANTED** in part. Plaintiff is directed to submit her claims to binding arbitration pursuant to the NASD Code of Arbitration Procedure.

**SO ORDERED.**