EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

FRANK'S NURSERY & CRAFTS,
INC., Defendant.

No. 96–CV–75021–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 22, 1997.

Stanley H. Pitts, Adele Rapport, Deborah M. Barno, Equal Employment Opportunity Com'n, Detroit, MI, for plaintiff.

Charles C. Dewitt, Jr., Brian B. Smith, DeWitt, Balke & Vincent, Detroit, MI, for defendant.

### *MEMORANDUM OPINION AND ORDER*

ZATKOFF, District Judge.

### I. INTRODUCTION

This matter is before the Court on defendant's motion to compel arbitration pursuant to a written employment application and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Plaintiff filed a response, and defendant has replied. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D.Mich.Local R. 7.1(e)(2), it is hereby ORDERED that

the motions be resolved on the briefs submitted. For the reasons set forth below, defendant's motion is granted.

## II. BACKGROUND

The plaintiff, EEOC, has brought suit on behalf of Carol Adams ("Adams"), an African American woman, who was employed by Frank's Nursery and Crafts as an Executive Assistant (secretary) in the Human Resources Department from August 30, 1993, until she voluntarily resigned on April 4, 1995. At the time she was hired, Adams completed and signed a form employment application that requires compulsory arbitration of any and all employment claims. The application states:

> I understand and agree that any claim I may wish to file against the Company ... relative to my employment or termination of employment (including but not limited to any claim for any tort, discrimination, breach of contract, violation of public policy or statutory claim) must be filed no more than sixth months after either occurrence of which I am complaining or the termination of my employment, whichever occurs first.... Any and all claims must be submitted for binding and final arbitration before the American Arbitration Association....

Defendant's Ex. 1.

After signing the employment application under the words "I have reviewed, understand, and agree to the above," Adams was hired. Defendant's Ex. 1. Adams went to work as an Executive Assistant to the Human Resources Department. Her duties were to provide administrative support to the departmental managers including the Vice President of Human Resources, the Director of Human Resources and the Manager of Human Resources.

In January of 1995, Frank's hired a new Vice President of Human Resources, Carol Cox. According to Ms. Cox, she felt the need to hire an administrative assistant to work directly for her, instead of sharing one assistant, Adams, with the other managers. Thereafter, Ms. Cox created the position of Executive Administrative Assistant, which would directly work for only her. Ms. Cox did not consider Adams for the position because she (Cox) wanted someone with better skills and the ability to work longer hours. Defendant's Ex. 3. Ms. Cox instead hired Lorraine Kryszak, who she felt was better suited to support her.

Adams continued to work for the Director of Human Resources and the Manager of Human Resources, and continued to receive the same pay and benefits. However, on the day Ms. Kryszak started, March 14, 1995, Adams filed a complaint with the EEOC alleging that she was bypassed for promotion to the position of Executive Administrative Assistant because of her race. Defendant's Ex. 5. She subsequently resigned, voluntarily, on April 4, 1995.

After investigating the matter, the EEOC issued a finding that rejected the defendant's reasons for failing to place the plaintiff in the Executive Administrative Assistant position. After negotiations failed, the EEOC brought suit on plaintiff's behalf alleging that Frank's engaged in unlawful employment practices by: (1) bypassing Adams for promotion to Executive Administrative Assistant because of her race; and (2) requiring Adams, and other applicants, to sign and comply with the terms of employment application requiring arbitration of disputes.

Frank's has brought the current motion to stay the proceedings in this Court and compel arbitration pursuant to 9 U.S.C. § 4.

## III. OPINION

There are three issues presented in the current motion before the Court. First, whether a signed, anticipatory employment application which compels arbitration of Adams' Title VII claims is legally enforceable. Second, if such an agreement is enforceable, did Adams sign the agreement knowingly and voluntarily. Lastly, whether the EEOC is bound by Adams' agreement to arbitrate.

The Federal Arbitration Act (FAA), 9 U.S.C. § 2 provides that a contract agreeing to submit a claim or controversy to arbitration is binding and enforceable absent an exception at law or equity for the revocation

of any contract.[1] Furthermore, sections 3 and 4 of the FAA provide that a district court may order a stay of the proceedings and compel the case to arbitration pursuant to the agreement.

 Following the Supreme Court's opinion in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), it is clear that statutory claims may be the subject of an arbitration agreement enforceable under the FAA. The *Gilmer* court stated the rule that a party having made an agreement to arbitrate should be held to it unless Congress "has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 26, 111 S.Ct. at 1652. The burden is on the party contesting arbitration to "show that Congress intended to preclude a waiver of a judicial forum . . . ." *Id.* Thus, the burden is on the plaintiff to show that Congress intended to preclude a waiver of a judicial forum for Title VII claims. This, plaintiff cannot do.

Congress has in fact evinced a specific intent to encourage arbitration of Title VII claims. Section 118 of the Civil Rights Act of 1991 provides that "[w]here appropriate and to the extent authorized by law, the use of alternate dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under [Title VII]." Pub.L. 102–166, § 118, 105 Stat. 1071, 42 U.S.C. § 1981.

However, notwithstanding the plain language of section 118 which encourages the use of arbitration for Title VII claims, plaintiff insists that the legislative history accompanying section 118 evinces an intent by Congress to prohibit arbitration agreements in situations like that at issue in this case. It is plaintiff's position that although Title VII claims can be arbitrated, the legislative history indicates that they must be done so by voluntary agreement of the parties *after* the dispute has arisen and that a party cannot agree *in advance*, as a condition of employment, to proceed to binding arbitration for any disputes that arise later. In sum, according to the plaintiff, the legislative history of section 118 evinces the intention of Congress to preclude arbitration agreements in the case alleged here, thus, the exception as established by *Gilmer* applies, and the agreement to arbitrate as signed by Adams is not enforceable. The Court does not agree.

First, as cited by the defendant in its brief, there have been a plethora of courts that have found enforceable agreements to send future Title VII disputes, as well as other statutory claims such as Americans with Disabilities and Age Discrimination Act claims, to binding arbitration in lieu of a judicial forum. *See* Defendant's brief pp. 5–7.

Second, although plaintiff argues that the legislative history evinces the inapplicability of the arbitration agreement to the facts of this case, plaintiff has not cited one federal case to this Court that holds that an anticipatory agreement to arbitrate a future Title VII claim is per se invalid. Plaintiff's citation of *Adams v. Philip Morris, Inc.*, 67 F.3d 580 (6th Cir.1996) is misleading because that case involved the validity of an agreement to *release* a claim completely, not an agreement to submit a claim to arbitration. *Id.* at 582.

 Moreover, the Court finds plaintiff's arguments based upon the legislative history of Pub.L. 102–166, § 118 unpersuasive. Plaintiff mis-characterizes the legislative history. The legislative history that plaintiff relies upon in part, states that although section 118 encourages voluntary arbitration of Title VII claims, it should not be read to include "coercive attempts to force employees in advance to forego statutory rights." 137 Cong. Rec. H9530 (daily ed. November 7, 1991) (statement of Rep. Edwards). Thus, it is plaintiff's argument that the arbitration agreement at issue in this case amounts to a 'coercive attempt to force employees to forego statutory right.' However, a prospective, voluntary agreement to proceed to arbitration with a future Title VII dispute does not amount to an employee 'foregoing', or waiving, statutory rights. Rather, "by agreeing to arbitrate a statutory claim, a party does *not forego the substantive rights afforded by statute;* it only submits to their resolution in an arbitral, rather than judicial, forum."

---

1. Plaintiff does not raise the exception to arbitration found in 9 U.S.C. § 1, and it clearly does not apply in this case. *See Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 600 (6th Cir.1995).

*Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) *quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626–28, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (emphasis added). Plaintiff's attempt to equate the waiver, or release, of a statutory right with an agreement to arbitrate such a right is unconvincing and misleading.

■ Additionally, this Court does not find that Adams was 'forced' to forego anything according to the language as used in the legislative history. In the case at bar, Adams was not yet an employee and was applying for a position; she had no relationship with the Frank's whatsoever. If she disagreed with anything contained in the application she was free to simply look elsewhere for employment. This is not a situation where a current employee is forced to agree to something, or to give up some right, and risk losing his or her job. When a party, such as Adams in this case, voluntarily *agrees* to something in an attempt to obtain employment, they are not being 'forced' to do anything in any true sense of the word.

Moreover, the Court agrees with those courts that have considered, and criticized, the same legislative history that plaintiff attempts to rely on here. *See e.g. Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996); *Beauchamp v. Great West Life Assurance Co.,* 918 F.Supp. 1091, 1093–1096 (E.D.Mich.1996) (Gadola, J.).

■ The Court finds as a matter of law that prospective agreements to arbitrate Title VII claims, notwithstanding the legislative history of Pub.L. 102–166, § 118, do not violate federal law or policy. Accordingly, Adams' agreement to arbitrate is enforceable.

■ Plaintiff next argues that arbitration should not be compelled because Adams did not knowingly and voluntarily agree to arbitrate her Title VII claim. Plaintiff relies on the widely criticized case of *Prudential Insurance Co. v. Lai,* 42 F.3d 1299, 1305 (9th Cir.1994) *cert. denied Prudential Insurance Co., v. Lai,* —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995), for the proposition that even though Adams signed the agreement, she can only be held to the arbitration clause if she knowingly agreed to arbitrate her particular employment discrimination claims.

Plaintiff argues that Adams did not understand the arbitration clause and she did not intend to agree to arbitrate her Title VII claims when she signed the agreement.[2] The agreement clearly states that it covers any claim relative to employment; including discrimination or statutory claims. This clearly encompasses Adams' Title VII claims. The simple fact of the matter is that if Adams did not understand or intend to agree to arbitration she should not have signed her name until she did understand or consulted with someone. *Scholz v. Montgomery Ward & Co.,* 437 Mich. 83, 92, 468 N.W.2d 845 (1991). The Court agrees with the decision of *Beauchamp v. Great West Life Assurance Co.,* 918 F.Supp. 1091 (E.D.Mich.1996) (Gadola, J.). The court in *Beauchamp* held that:

> [T]his court chooses not to treat Prudential as persuasive precedent, instead holding, consistently with Gilmer, that a party is generally chargeable with knowledge of the existence and scope of an arbitration clause within a document signed by that party, in the absence of fraud, deception, or other misconduct that would excuse the lack of knowledge.

*Id.* at 1098; *See also Johnson v. Hubbard Broadcasting Inc.,* 940 F.Supp. 1447, 1454 (D.Minn.1996) (plaintiff was an intelligent, experienced woman with a college degree and although she may regret signing the agreement to arbitrate her claims without reading it, the Court may not ignore it.)

Plaintiff has presented no evidence of fraud, deception, or other misconduct. Thus, Carol Adams, an educated, experienced working adult is charged with knowledge of the existence and scope of the arbitration clause found within the document she signed under the words, "I have reviewed, understand, and agree to the above." *Beauchamp,* 918 F.Supp. at 1098; *Scholz,* 437 Mich. at 92, 468 N.W.2d 845; Defendant's Ex. 1. Accordingly, Adams cannot now escape the arbitra-

**2.** Plaintiff does not argue that Adams did not read the agreement.

tion clause by claiming she did not knowingly or voluntarily sign the application.

Finally, the EEOC argues that it is not bound by the arbitration agreement from bringing suit on behalf of Adams or on behalf of a class similarly situated employees and the public. The Court agrees in part and disagrees in part.

■ The EEOC's argues that because *they* didn't agree to arbitrate any claims they can still bring suit in a judicial forum on Adam's behalf, notwithstanding *Adams'* agreement to arbitrate. This is partially correct. To the extent that the EEOC is suing for substantive relief (back pay, reinstatement, etc.) *on behalf of* a specific individual who has been allegedly discriminated against, they must take their plaintiff as they find them. This includes a plaintiff who has signed a valid agreement to arbitrate their employment disputes. Thus, to the extent that Adams is bound by her agreement to arbitrate, so is the EEOC. *See generally Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) ("Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."); *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1290–93 (7th Cir.1993). To decide otherwise would render agreements to arbitrate voidable at the whim of the EEOC. Therefore, to the extent Adams is seeking substantive relief for alleged racial discrimination, she must proceed to arbitration per her signed agreement and the EEOC may not pursue the same claim for the same relief on her behalf in this Court.

■ The EEOC's complaint also seeks relief in the form of an injunction enjoining the defendant from engaging in discriminatory employment practices on the basis of race. The EEOC argues that notwithstanding Adams substantive claims which must be arbitrated, it may proceed in this Court seeking an injunction against further violations, on behalf of a class of other individuals, if it can prove racial discrimination. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31–33, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991); *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir.1993). As a general matter this is correct, however, in this instance, the Court does not agree.

The EEOC's lawsuit may not proceed for injunctive relief on behalf of a class of individuals allegedly discriminated against because of race simply because the EEOC, in this instance, has neither identified, nor pled in their complaint, any facts or allegations that a *class* of individuals were discriminated against on the *basis of their race*. The EEOC has pled only that Adams was discriminated against on account of her race. Accordingly, the lawsuit may not proceed on those grounds.

Furthermore, the EEOC's lawsuit may not proceed for injunctive relief, on behalf of alleged similarly situated individuals, on the grounds that requiring employees to sign and comply with the terms of the arbitration clause found in the application agreements is against federal law and policy.

Plaintiff's complaint alleges discrimination of a class of similarly situated individuals on the basis that Frank's requirement that employees sign and comply with an employment application agreements to arbitrate statutory claims is improper and/or illegal. As set forth above, normally the EEOC has the power to seek relief for a class or persons or for equitable relief. However, this Court has found, as a matter of law, that agreements such at issue in this case are not improper, illegal, or against federal law or policy. Therefore, the EEOC has no basis on which to state a claim that similarly situated individuals (or Adams) have been discriminated against, or had their rights violated, by signing employment applications which agree to arbitrate statutory claims arising from employment disputes.

■ Lastly, the Court turns to the issue of a stay pending arbitration. Section 3 of the FAA does provide that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." 9 U.S.C. § 3. However, other courts have held that this provision does not limit dismissal of the case when all

of the issues raised in the district court must be submitted to arbitration. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992); *Sparling v. Hoffman Const. Co., Inc.,* 864 F.2d 635, 638 (9th Cir.1988); *Hoffman v. Fidelity and Deposit Company of Maryland,* 734 F.Supp. 192, 195 (D.N.J. 1990). The Fifth Circuit in *Alford* stated:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. . . .

*Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) (quoting *Sea–Land Service, Inc. v. Sea–Land of P.R., Inc.,* 636 F.Supp. 750, 757 (D.Puerto Rico 1986)).

The Court agrees with the decision of *Alford.* Similarly, the Court has ruled that the only viable claim in this case—Adams' individual claim seeking damages due to alleged racial discrimination—must be arbitrated. Therefore, consistent with the Fifth Circuit's opinion in *Alford,* staying the action will serve no purpose. Accordingly, the case is dismissed.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that defendant's motion to compel arbitration is GRANTED. IT IS FURTHER ORDERED that plaintiff's complaint is DISMISSED.

### *JUDGMENT*

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Order dated April 22, 1997, plaintiff's action is DISMISSED.