**Lillian Pebbles MORRISON, Plaintiff,**

v.

**CIRCUIT CITY STORES, INC., Defendant.**

No. C–1–99–017.

United States District Court, S.D. Ohio, Western Division.

Aug. 12, 1999.

Kelly Mulloy Myers, Freking & Betz—1, Cincinnati, OH, for Lillian Peebles Morrison, plaintiff.

Daniel Goodman Rosenthal, Denlinger, Rosenthal & Greenberg—1, Cincinnati, OH, for Circuit City Stores Inc., defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on a Motion by Defendant Circuit City Stores, Inc. to Compel Arbitration and Stay or Dismiss Proceedings (doc. 3); Declaration of Pamela G. Parsons in Support of Defendant's Motion to Compel Arbitration and Stay or Dismiss Proceedings (doc. 4); Plaintiff Lillian Pebbles Morrison's Memorandum in Opposition to Defendant's Motion (doc. 7); Defendant's Reply (doc. 8); and Defendant's Supplemental Authority (doc. 11).

The Court held a hearing in this matter on April 20, 1999.

## BACKGROUND

This is an employment discrimination action brought by Plaintiff Lillian Pebbles Morrison pursuant to Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, as amended in 1991 by 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Ohio Rev.Code § 4112 (*see* doc. 1). Plaintiff originally filed her Complaint on December 11, 1998 in the Hamilton County Court of Common Pleas. Defendant Circuit City Stores, Inc., a retailer of consumer electronics and appliances, then removed the case to this Court on January 12, 1999 pursuant to Title 28 U.S.C. §§ 1331, 1332, and 1441.

Prior to her discharge on December 12, 1997, Plaintiff worked as a store manager for one of Defendant's Cincinnati area

stores. According to Defendant, Plaintiff was 30 years old with an undergraduate degree from the U.S. Air Force Academy and a master's degree from Central Michigan University when she applied for a position with Defendant on July 10, 1995 (doc. 4, Parsons Decl. ¶ 5 & Ex. A). Defendant hired Plaintiff on December 1, 1995.

As part of the application and hiring process, Plaintiff signed two identical application forms, the first on July 10, 1995 (doc. 4, Ex. A), and the second on December 27, 1995 (copy provided to the Court during the April 20, 1999 hearing). Each application sets forth identical language about the "Circuit City Dispute Resolution Agreement" (hereinafter, the "Agreement"). In addition, each application states that the company will not consider any applicant for employment unless he or she also signs the Agreement.

The Agreement provides, in pertinent part, that an applicant will resolve:

> any and all previously unasserted claims, disputes or controversies arising out of or relating to [his or her] application or candidacy for employment, employment and/or cessation of employment with Circuit City, *exclusively* by final and binding *arbitration* before a neutral Arbitrator. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and law of tort.

(doc. 4, Parson Decl., Ex. A) (emphasis in original).

Above the text of the Agreement, the application states in boldface type that:

> **With this application you should have received the *Rules and Procedures of the Agreement*. You should familiarize yourself with these rules and procedures prior to signing the Agreement. If you did not receive the Rules and Procedures you must request a copy from a Circuit City representative prior to signing the Agreement.**

(*Id.*) (emphasis in original). Once an applicant signs the Agreement, the Agreement allows the applicant three days in which to withdraw his or her consent to the Agreement. The applicant may also take the application package home and return it later with his or her signature affixed (*Id.*).

Furthermore, the Agreement states that: **"The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures affect your legal rights. You may wish to seek legal advice before signing this Dispute Resolution Agreement"** (*Id.*) (emphasis in original). The following clauses offer some detail as to how legal rights will be affected by the Agreement:

> I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my application or candidacy for employment, employment or cessation or employment, Circuit City may use this Agreement in support of its request to the court to dismiss the lawsuit and require me instead to use arbitration.

> \* \* \* \* \* \*

> This Agreement will be enforceable throughout the application process, my employment, and thereafter with respect to any claims arising from or relating to may application or candidacy for employment, employment or cessation of employment with Circuit City. I then must arbitrate all employment-related claims, and I may not file a lawsuit in court.

(*Id.*)

Defendant now moves this Court to compel arbitration and stay these proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, or, in the alternative, to dismiss this case entirely

pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, because Plaintiff and Defendant are parties to this Agreement requiring them to resolve this type of dispute through final and binding arbitration.

Plaintiff responds that the Agreement is invalid and unenforceable because it fails to comply with common law principles of contract law and because it attempts to limit Plaintiff's substantive rights and remedies. Therefore, Plaintiff argues, the FAA does not require that the Court stay or dismiss this action and the Court thereby retains subject matter jurisdiction.

### STANDARD OF REVIEW

■■■ A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction attacks a plaintiff's cause of action in one of two ways: facially or factually. Fed. R.Civ.P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). A facial attack challenges the sufficiency of the complaint itself. On such an attack, the court must take all material allegations in the complaint as true and construe them in a light most favorable to the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. The court reviewing such a motion need not presume that the factual allegations set forth in the complaint are true. *Id.* Instead, the court may weigh any evidence properly before it. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986).

In addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept all allegations in the complaint as true and view them in a light most favorable to the party opposing the motion. Fed.R.Civ.P. 12(b)(6); *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.

1983). The court may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Balderaz v. Porter*, 578 F.Supp. 1491, 1494 (S.D.Ohio 1983).

In the instant matter, Defendant refutes the factual allegations in Plaintiff's Complaint concerning the enforceability of the Agreement. In support of its Motion to Dismiss, Defendant submits a copy of the application Plaintiff signed on July 10, 1995 and a declaration from Pamela G. Parsons concerning that application and the Agreement. Apparently because the Agreement requires final and binding arbitration of all employment disputes, Defendant asserts that the Court lacks subject matter jurisdiction over Plaintiff's Complaint, or, alternatively, that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

■■■ As mentioned earlier, a court may consider any evidence properly before it when a defendant factually attacks subject matter jurisdiction under Rule 12(b)(1). However, evidence outside the pleadings may not be used to support motions brought pursuant to Rule 12(b)(6) unless the evidence is referenced in the plaintiff's complaint and is central to a plaintiff's claims. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993). In this case, Plaintiff specifically references the Agreement in her Complaint and she argues in Count I of her Complaint that the Agreement is unenforceable. Therefore, the Court finds that we may consider the Agreement and Ms. Parson's declaration in deciding whether to dismiss this action pursuant to Rule 12(b)(1) or Rule 12(b)(6).

### DISCUSSION

The threshold issue before the Court is the applicability of the Federal Arbitration Act, Title 9 U.S.C. § 1 *et seq.*, to the facts

of this case. Defendant asserts that the FAA applies to this case and that the FAA requires the enforcement of the Agreement.

## I. Federal Arbitration Act

The FAA provides that arbitration provisions in any "contract evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 1 of the FAA, though, excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from coverage under the FAA. 9 U.S.C. § 1. Nonetheless, the Sixth Circuit Court of Appeals construes this exclusionary clause narrowly. In *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir.1995), the Sixth Circuit held that:

> the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are.

*Id.*, 71 F.3d at 600–601.

In the instant matter, the Court finds that Plaintiff was not engaged in the movement of goods in interstate commerce in the same manner of seamen and railroad workers while she worked as a store manager for Defendant. Therefore, the Agreement signed between Plaintiff and Defendant for the arbitration of all employment disputes falls within the type of contracts contemplated by the FAA. *See Cosgrove v. Shearson Lehman Bros.*, No. 95–3432, 1997 WL 4783, 1997 U.S.App. LEXIS 392, at *4 (6th Cir. Jan. 6, 1997).

Furthermore, the Sixth Circuit recognizes that both statutory and common law claims may be subject to an arbitration agreement enforceable under the FAA. *See Cosgrove*, 1997 WL 4783, 1997 U.S.App. LEXIS 392, at *5–*6 (citing *Gil-mer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (holding that claims arising under the Age Discrimination in Employment Act ("ADEA") may be subject to an enforceable arbitration agreement); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir.1991) (extending the holding of *Gilmer* to claims arising under Title VII)). The Supreme Court reiterated in *Gilmer* that, " '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " *Id.*, 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

In this case, the Agreement purports to apply to "any and all previously unasserted claims, disputes, or controversies arising out of or relating to [Plaintiff's] application or candidacy for employment, employment and/or cessation of employment with [Defendant]." The Agreement also explicitly states that it applies to actions brought under federal, state, and local statutory or common law, including the ADEA, Title VII, the Americans with Disabilities Act, the law of contract, and the law of tort.

Plaintiff's seven-count Complaint contends that Defendant unlawfully discharged her in violation of Title VII, Ohio Rev.Code § 4112, Ohio public policy, and Ohio common law. Because we find no evidence that Congress intended to preclude the arbitration of her statutory claims and because Plaintiff fails to persuade us that Ohio would preclude the arbitration of her state-law claims, the Court concludes that Plaintiff should be held to her bargain unless (1) the traditional grounds for revocation of a contract exist in this case or (2) the Agreement fails to protect the substantive rights guaranteed by law. *See* 9 U.S.C. § 2; *Gilmer*, 500 U.S. at 28, 33, 111 S.Ct. 1647 (quoting

*Mitsubishi Motors Corp.,* 473 U.S. at 637, 627, 105 S.Ct. 3346 respectively).

## II. Enforceability of the Agreement

Plaintiff urges the Court to find the Agreement unenforceable, arguing that the Agreement is an unconscionable adhesion contract that limits Plaintiff's substantive rights and remedies under Title VII and Ohio Rev.Code § 4112. In addition, Plaintiff asserts that the Agreement lacks mutuality of obligation and consideration and impermissibly waives future rights. Plaintiff also contends that the Agreement violates public policy by taking away the applicant's right to a jury trial and instead requiring final, binding arbitration.

In the following subsections, the Court addresses each of Plaintiff's arguments separately and concludes that no argument leads to a finding that the Agreement at issue in this case is unenforceable.

### A. Adhesion Contract

■ A court examines an arbitration agreement according to state-law principles of contract formation. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (finding that "arbitration is simply a matter of contract between the parties"). In view of the fact that Plaintiff signed the Agreement in Ohio and that her employment and termination occurred in Ohio, the Court will apply the common law of Ohio to this matter.

■ Plaintiff first claims that the Agreement is an unconscionable contract of adhesion. The Ohio Supreme Court referred to Black's Law Dictionary in describing a contract of adhesion as a " '[s]tandardized contract form offered ... on essentially [a] 'take it or leave it' basis.' " *Sekeres v. Arbaugh,* 31 Ohio St.3d 24, 31, 508 N.E.2d 941, 946 (1987) (quoting Black's Law Dictionary 38 (5th ed.1979)). Meanwhile, unconscionability is defined as " 'an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.' " *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.,* 113 Ohio App.3d 75, 80, 680 N.E.2d 240, 243 (1996) (quoting *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 834, 621 N.E.2d 1294, 1299 (1993)); *see also David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 249 (2nd Cir.1991) (finding that a plaintiff must show " 'unfairness, undue oppression, or unconscionability' " before a federal court will strike an arbitration agreement as a contract of adhesion) (citations omitted).

■ Ohio courts conduct a two-prong inquiry into whether a contract is unconscionable. *Dorsey,* 113 Ohio App.3d at 80–81, 680 N.E.2d at 243 (citing *Collins,* 86 Ohio App.3d at 834, 621 N.E.2d at 1299). The first prong looks at whether the contract terms are so unfair and unreasonable as to constitute substantive unconscionability while the second prong focuses on the relative bargaining power of the contracting parties to determine whether procedural unconscionability exists. *Id.*

In support of her argument that the Agreement is a contract of adhesion, Plaintiff alleges that she was "forced" to sign the Agreement as part of the application in order to be considered for employment by Defendant. Plaintiff also contends that Defendant, a large company with retail facilities across the country, is more sophisticated and maintains more bargaining power than Plaintiff. She states that she was extremely surprised to learn that the Agreement amounted to a waiver of her right to a judicial forum and a jury trial. Plaintiff further argues that the Agreement is unconscionable because it threatens to deny her the substantive rights and remedies provided by Title VII and Ohio Rev.Code § 4112.

In contrast, Defendant asserts that the Agreement is not a contract of adhesion simply because Plaintiff had to sign it before she could be considered for employment. Defendant states that several other

822

electronics retailers exist in the Cincinnati area, and it argues that Plaintiff could have applied for positions with these retailers. Defendant cites *Beauchamp v. Great West Life Assurance Co.,* 918 F.Supp. 1091, 1098 (E.D.Mich.1996), and *EEOC v. Frank's Nursery & Crafts,* 966 F.Supp. 500, 504 (E.D.Mich.1997) (*rev'd on other grounds,* 177 F.3d 448, 454–55 (6th Cir. 1999)), in support of the proposition that adhesion contracts do not exist where applicants have a choice of where to apply for a job. In *Beauchamp,* the court indicated its reluctance in finding a contract of adhesion in a context where a plaintiff could choose to work for other employers without signing arbitration agreements. *Id.,* 918 F.Supp. at 1098. Likewise, the court in *Frank's Nursery & Crafts* stated that "[i]f [the applicant] disagreed with anything contained in the application she was free to simply look elsewhere for employment.... (When a party ... voluntarily *agrees* to something in an attempt to obtain employment, they are not being 'forced' to do anything"). *Id.,* 966 F.Supp. at 504 (emphasis in original).

Defendant also contends that the application and its arbitration provisions are not unconscionable just because Plaintiff was only one of many employees working for a large, nationwide retailer. Defendant notes that the court in *Beauchamp* responded to a similar balance-of-power argument, stating: "Under plaintiff's theory, practically every condition of employment would be an 'adhesion contract' which could not be enforced because it would have been presented to the employee by the employer in a situation of unequal bargaining power on a 'take it or leave it' basis." *Id.,* 918 F.Supp. at 1098. Moreover, in *Gilmer,* the Supreme Court stated that the "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Id.,* 500 U.S. at 33, 111 S.Ct. 1647.

Defendant further alleges that Plaintiff is "a well-educated, mature and experienced manager, who certainly understood the effect of the arbitration agreement and fully appreciated her choices" (doc. 3). In addition, Defendant argues that the Agreement signed by both Plaintiff and Defendant pursuant to the application was "clear and unambiguous" and could not lead to the type of surprise Plaintiff now asserts. *See Frank's Nursery & Crafts,* 966 F.Supp. at 504 (agreeing with the *Beauchamp* court and stating that "[t]he simple fact of the matter is that if [the applicant] did not understand or intend to agree to arbitration she should not have signed her name until she did understand or consulted with someone.").

The Court finds Defendant's arguments persuasive, and we conclude that Plaintiff fails to show the unfairness or undue oppression necessary to support a finding that the Agreement amounted to an unconscionable contract of adhesion on a substantive or procedural basis. Furthermore, as discussed in Subsection E, *infra,* we find that the terms of the Agreement are fair and reasonable. We also find here that the balance of power between Plaintiff as an applicant and Defendant as a potential employer was not so disproportionate as to prevent a voluntary meeting of the minds on the issue of arbitration. *See Dorsey,* 113 Ohio App.3d at 80, 680 N.E.2d at 243.

### B. Mutuality of Obligation

Plaintiff next contends that mutuality of obligation is lacking in the Agreement because Defendant is not bound to the Agreement's terms. Under Ohio law, a contract cannot be enforced without mutuality of obligation. *Thomas G. Snavely Co. v. Brown Constr. Co.,* 16 Ohio Misc. 50, 55–56, 239 N.E.2d 759, 762 (1968). In *Trumbull v. Century Mktg. Corp.,* 12 F.Supp.2d 683, 686 (N.D.Ohio 1998), a case relied upon by Plaintiffs, the district court found that there was no mutuality of obligation or consideration in an

employment handbook signed by an employee after employment began since the employer could revoke any term at any time. *Id.* at 685–86. Accordingly, the court held that the employee handbook could not be an enforceable contract. *Id.* After also finding alternatively that the employee did not knowingly agree to arbitrate disputes and that the arbitration process offered would limit a substantive remedy granted by a statute, the *Trumbull* court denied the defendant's motion to stay. *Id.* at 687–88.

Plaintiff argues here that, like the employee handbook in *Trumbull,* the Agreement in this case is of a unilateral nature. Plaintiff alleges that, while no provision exists for an employee to alter or terminate the Agreement, Rule 19 of the Dispute Resolution Rules and Procedures provides that:

> [Defendant] may alter or terminate the agreement and these Dispute Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written notice to associates.

Thus, Plaintiff asserts, the Agreement cannot be enforced because mutuality of obligation is lacking.

In response, Defendant argues that mutuality of obligation is maintained because Defendant can only modify or terminate the Agreement or the Rules and Procedures at a certain time each year and only upon 30 days' notice to each employee. Defendant points to *Kelly v. UHC Management Co.,* 967 F.Supp. 1240, 1258–60 (N.D.Ala.1997), in support of its argument that the ability to modify or terminate a contract does not destroy mutuality of obligation. *Kelly,* 967 F.Supp. at 1258–60 (finding an arbitration agreement to be valid despite a clause allowing the employer to alter or revoke at any time). Moreover, Defendant argues that both Plaintiff and Defendant "made an objective manifestation of their intent to be bound" to arbitration of employment-related claims by signing the short but detailed Agreement in the application form (doc. 3). De-fendant distinguishes its six-page application form from the sixty-page employee handbook in which the employer in *Trumbull,* 12 F.Supp.2d at 687, "buried" its arbitration clause.

The Court agrees that the facts of this case may be distinguished from the facts of *Trumbull.* Both Plaintiff and Defendant signed the Agreement within the short job application, and even though Defendant could alter or terminate the Agreement or the Rules and Procedures, Defendant could only do so at certain times and only after providing 30 days' notice to employees. Accordingly, we find that both parties are bound to the terms of the Agreement, and thus, mutuality of obligation exists.

### C. Lack of Consideration

█ For the same reasons asserted above, Plaintiff contends that the Agreement also lacks consideration. Specifically, Plaintiff alleges that Defendant could freely terminate or modify the Agreement and that, therefore, Defendant gave up nothing of value in exchange for Plaintiff's promise to arbitrate. In addition, Plaintiff asserts that, because she signed the second application form after her employment began, an accompanying promise by Defendant to employ her cannot constitute consideration.

█ Under Ohio law, "[v]aluable consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Ford v. Tandy Transp., Inc.,* 86 Ohio App.3d 364, 384, 620 N.E.2d 996, 1009 (1993). Furthermore, "[i]t is axiomatic that courts, as a general rule, will not inquire into the adequacy of consideration once consideration is said to exist." *Rogers v. Runfola & Assoc., Inc.,* 57 Ohio St.3d 5, 6, 565 N.E.2d 540, 542 (1991).

Defendant argues that the Agreement is supported by consideration. According to Defendant, Plaintiff was an at-will employee and Defendant was not required by law to arbitrate job termination issues related

to at-will employees. Therefore, Defendant asserts that its promise to submit to arbitration constituted adequate consideration. Moreover, Defendant cites to the Restatement (Second) of Contracts for the proposition that its ability to alter or terminate the Agreement does not render the above promise illusory. *See* Restatement (2d) of Contracts § 77(b) Cmt. b, illus. 5 (1979) (describing that a principal's ability to terminate the agency only upon 30 days notice is consideration); *see also Kelly,* 967 F.Supp. at 1260.

In *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 378 (4th Cir.1998), the Fourth Circuit found that the same Circuit City arbitration agreement to be supported by adequate consideration:

> [B]oth parties in this case agreed to be bound by the arbitration process for the resolution of any claim required to be submitted to arbitration under the Dispute Resolution Agreement. Therefore, we hold that the Dispute Resolution Agreement was supported by adequate consideration ... no consideration above and beyond the agreement to be bound by the arbitration process was required.

*Id.* at 378; *see also O'Neil v. Hilton Head Hosp.,* 115 F.3d 272, 275 (4th Cir.1997) (holding that a mutual promise to arbitrate constitutes sufficient consideration for an arbitration agreement). Likewise, in *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir.1999), the Seventh Circuit found that "Circuit City's promise to be bound by the arbitration process itself serves as mutual consideration here."

This Court finds that the Agreement challenged in the instant matter is supported by consideration. Plaintiff promised to arbitrate all employment-related disputes in exchange for Defendant's promise to consider her for employment and then to continue to employ her. Defendant also promised to be bound by the arbitration process and any resolutions reached as a result of the arbitration; Defendant could only alter or revoke this promise under certain circumstances. *See*

*Michalski,* 177 F.3d at 636–37; *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 368 (7th Cir.1999) (finding adequate consideration in the employer's promise to employ an applicant who signed an arbitration agreement). Thus, we reject Plaintiff's argument that the Agreement cannot be enforced for a lack of consideration.

### D. Waiver of Future Rights

Plaintiff further asserts that the Agreement is an invalid waiver of her prospective rights under both state and federal law. In support of her argument, Plaintiff cites to cases in which courts required waivers of prospective rights to be made knowingly, voluntarily, and intentionally. *See Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583–84 (6th Cir.1995); *Trumbull,* 12 F.Supp.2d at 686; *Parente v. Day,* 16 Ohio App.2d 35, 38, 241 N.E.2d 280, 282 (1968). Plaintiff also quotes from *Adams* that the "general rule in [the Sixth Circuit is] that an employee may not prospectively waive his or her rights under either Title VII or the ADEA." *Id.,* 67 F.3d at 584.

However, as Defendant indicates, Plaintiff's quotation from *Adams* is misleading. In *Adams,* the Sixth Circuit addressed an agreement to release a claim entirely and not to submit the claim to an arbitral forum. *Id.* at 583–84. The Supreme Court in *Mitsubishi Motors Corp.,* though, found that "a party does not forgo" substantive rights in signing an arbitration agreement. *Id.,* 473 U.S. at 628, 105 S.Ct. 3346. Instead, the party allows the rights to be addressed through arbitration. *Id.* Moreover, the Sixth Circuit in *Willis* specifically recognized that parties could agree to arbitrate future claims arising under Title VII. *Id.,* 948 F.2d at 310.

Defendant further contends that parties may waive the right to a jury trial by prior written agreement. *K.M.C. Co., Inc. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir.1985); *see also Koveleskie,* 167 F.3d at 368 (noting that the right to an Article III forum is waivable and finding that plaintiff

waived that right by consenting to arbitration). As the court in *K.M.C. Co.* noted, any such waivers must be knowing and voluntary. *Id.*, 757 F.2d at 755. In *Trumbull*, the district court found that the plaintiff did not knowingly or voluntarily waive her rights. *Id.*, 12 F.Supp.2d at 687. The arbitration clause at issue in *Trumbull* took up less than two pages of a sixty-page employee handbook and gave no indication that it affected the employee's legal rights. *Id.* Furthermore, the arbitration clause failed to specifically explain that it could affect federal or state law claims. *Id.*

However, in this case, we initially find that the Agreement in which Plaintiff and Defendant promised to submit to final and binding arbitration of any employment-related claims is clear and unambiguous. The Agreement, set forth in two pages of a six-page application form, specifically notes the types of claims that are subject to arbitration. In bold-faced print, the language of the Agreement alerted Plaintiff that the Agreement affected her legal rights and that legal advice may be warranted. The language also informed her that Circuit City could ask a court to compel arbitration of any employment-related claims.

Furthermore, we find that Plaintiff entered into the Agreement knowingly and voluntarily. First, as we noted above, the Agreement clearly and unambiguously explains that it amounts to a waiver of a judicial forum and a jury trial. Secondly, her background indicates that she had knowledge of management– and administration-related issues. According to the application forms she signed, Plaintiff had earned an undergraduate degree from the U.S. Air Force Academy and a master's degree from Central Michigan University prior to applying for a job with Defendant (*see* doc. 4, Parsons Decl., Ex. A). Thirdly, the Agreement indicates that she could have withdrawn her consent to the Agreement within three days of signing the application form, and Plaintiff concedes that she did not withdraw her consent.

Accordingly, we conclude that the Agreement represents a knowing and voluntary waiver of Plaintiff's prospective right to a judicial forum and a jury trial for her employment-related claims.

### E. Process Provided by Agreement

■ Underpinning many of Plaintiff's arguments is her allegation that Defendant's Dispute Resolution Rules and Procedures deny her substantive rights and remedies. In *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647, the Supreme Court found that " 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' " *Id.*, 500 U.S. at 28, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 637, 105 S.Ct. 3346). Essentially, then, Plaintiff contends that Defendant's arbitration procedures prevent her from effectively vindicating her cause of action.

Plaintiff again relies on *Trumbull*, 12 F.Supp.2d at 688, to support her argument. In reaching its alternative holding that the arbitration procedure offered by the defendant was not an acceptable replacement for a judicial forum, the *Trumbull* court noted that, unlike Title VII, the defendant's procedure precluded punitive damages. The court found that when an arbitration proceeding limits any substantive right or remedy granted by a statute, that proceeding cannot effectively vindicate that statute's cause of action. *Id.*

Furthermore, Plaintiff refers to *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938–38 (4th Cir.1999), in which the Fourth Circuit held that an employer materially breached an arbitration agreement "by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." The arbitration rules set up by Hooters of America, Inc. ("Hooters") essentially allowed the company to unilaterally select

the arbitrator and control the proceedings. *Id.* According to the Fourth Circuit, Hooters' rules were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding." *Id.* at 938.

In the instant matter, Plaintiff asserts that Defendant's Dispute Resolution Rules and Procedures also "severely curtail" Plaintiff's substantive rights and remedies. Plaintiff points first to Rule 4 and argues that the time limit for initiating an arbitration proceeding is shorter than the time granted under Title VII or Ohio Rev.Code § 4112 for initiating a judicial proceeding. Rule 4 states:

> The "Circuit City Associate Arbitration Request Form" shall be submitted not later than **one year** after the date on which the associate knew, or through reasonable diligence should have known, of the facts giving rise to the associate's claim(s). The failure of an associate to initiate an arbitration within the one year limit shall constitute **a waiver** with respect to that dispute relative to that associate.

(doc. 4, Parsons Decl., Ex. B) (emphasis in original).

In contrast, Defendant argues that contractual parties may shorten statute of limitations. *See Myers v. Western–Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988) (finding "nothing inherently unreasonable about a six-month limitations period"). Defendant accordingly argues that the one-year limitation period provided for in the Agreement is reasonable.

Plaintiff secondly argues that discovery is restrained since the Dispute Resolution Rules and Procedures limit the number of interrogatories, the number of depositions, and the overall time for discovery. Under Rule 8, parties are to initially disclose all non-privileged documents that the parties believe support their positions (*see* doc. 4, Parsons Decl., Ex. B). In addition, Rule 8 requires:

- Circuit City to supply the employee with documents from the employee's personnel file;
- One set of interrogatories with a document request;
- Three depositions; and
- Any additional discovery upon a showing of substantial need.
- Discovery to be completed within 90 days with time extended for good cause.

(*Id.*).

In response to Plaintiff's limited-discovery argument, Defendant notes that the Supreme Court allows reasonable limitations on discovery in arbitration of statutory discrimination claims. *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647. Defendant further contends that the Dispute Resolution Rules and Procedures allow the parties to engage in meaningful discovery. Because additional discovery is possible and because the time can be extended for good cause, Defendant asserts that the discovery offered under the Dispute Resolution Rules and Procedures is also fair and reasonable.

Thirdly, Plaintiff contends that the Dispute Resolution Rules and Procedures limit the remedies and damages available to Plaintiff. Under Rule 14, an arbitrator is permitted to award:

- Injunctive relief, including reinstatement to employment;
- Up to one year of back pay and reimbursement for lost fringe benefits with interest;
- Up to two years of front pay if reinstatement is not practical or reasonable under the circumstances;
- Compensatory damages;
- Punitive damages equal to the monetary sum of the front pay, back pay, and benefits awarded, or $5,000, whichever is greater; and
- Reasonable attorney's fees and costs to a prevailing employee

(*Id.*). Plaintiff argues the limitations on back pay, front pay, and punitive damages

contradict the provisions of Title VII and Ohio Rev.Code § 4112.99.

In contrast, Defendant contends that a limitation on damages does not alone make an arbitration agreement unenforceable. *See Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 709 (7th Cir.1994) (finding that "parties [to an employment arbitration agreement] surely can stipulate that punitive damages will not be awarded."); *Degaetano v. Smith Barney, Inc.*, 983 F.Supp. 459, 468–69 (S.D.N.Y.1997) (enforcing an arbitration agreement generally, but voiding as against public policy the provision in the agreement precluding recovery of reasonable attorneys' fees); *Farrell v. Convergent Communications, Inc.*, No. C98–2613 MJJ, 1998 WL 774626, 1998 U.S. Dist. LEXIS 17314, at *14 (N.D.Cal. Oct. 29, 1998) (concluding that "limitations on the amount of damages alone does not render an agreement to arbitrate per se unconscionable, as parties are generally free to contract as they see fit").

Moreover, Defendant asserts that the limitations on back pay, front pay, and punitive damages would not preclude Plaintiff from recovering a fair and reasonable amount of damages. Defendant further calculates that Plaintiff could actually recover a higher award of damages under the arbitration than Title VII. According to Defendant, the Civil Rights Act of 1991 limits Plaintiff to $300,000 in combined compensatory and punitive damages. Title 42 U.S.C. § 1981a(a)(1) & (b)(3). On the other hand, the Circuit City arbitration rules, Defendant argues, would allow Plaintiff to recover up to $162,000 in punitive damages and unlimited compensatory damages. Thus, Defendant asserts that the total recovery for Plaintiff pursuant to an arbitration award could exceed the statutory minimum.

We note that other courts have approved of the remedies found in Defendant's arbitration agreement. *See Circuit City Stores, Inc. v. Adams*, No. C98–0365CAL (N.D.Cal. Apr. 29, 1998) (staying the proceeding and finding that the limitation on remedies does not "amount to the extreme one-sidedness that's required for a finding of unconscionability as a matter of law"); *Ward v. Circuit City Stores, Inc.*, No. CIV–S–97–0227 (E.D.Cal. Mar. 29, 1997) (finding that the remedies available under the Agreement are not unconscionable because they are sufficiently similar to limits in federal and state law).

After considering all of the arguments raised by Plaintiff about the arbitration procedure offered by Defendant, the Court is not persuaded that the procedure would be an unacceptable replacement for a judicial forum. To the contrary, we find that the one-year limitations period and discovery procedures are fair and reasonable. In contrast to the rules examined by the Fourth Circuit in *Hooters*, 173 F.3d at 938–39, Defendant's Dispute Resolution Rules and Procedures do not "undermine the neutrality of the proceeding." Moreover, Plaintiff may recover both compensatory and punitive damages as well as reasonable attorneys' fees and costs under the Agreement. Therefore, we conclude that Plaintiff could effectively vindicate her statutory and common law causes of action in the arbitral forum offered by Defendant.

### F. Public Policy

 Finally, Plaintiff asserts that the Agreement violates public policy by taking away her right to a jury trial. Plaintiff argues that both the U.S. Constitution and the Ohio Constitution express a public policy in favor of the right to a jury trial, and so mandatory arbitration agreements should not be enforced by the courts. In support of her argument, Plaintiff notes that the Equal Employment Opportunity Commission ("EEOC"), the National Academy of Arbitrators, and the Taskforce on Alternative Dispute Resolution in Employment have concluded that only voluntary and non-binding types of alternative dispute resolutions should be encouraged in the workplace. On July 10, 1997, the EEOC stated:

The use of unilaterally imposed agreements mandating binding arbitration of employment discrimination disputes as a condition of employment harms both the individual civil rights claimant and the public interest in eradicating discrimination. Those whom the law seeks to regulate should not be permitted to exempt themselves from federal enforcement of civil rights laws. Nor should they be permitted to deprive civil rights claimants of the choice to vindicate their statutory rights in the courts—an avenue of redress determined by Congress to be essential to enforcement.

EEOC Notice No. 915.002 (July 10, 1997), *reprinted in Excerpts from Text: EEOC Rejects Mandatory Binding Employment Arbitration,* 52 Disp. Resol. J. 11, 14 (1997).

Defendant, however, insists that both the Supreme Court and the Sixth Circuit recognize the value of arbitration and enforce valid arbitration agreements regardless of whether these agreements call for mandatory or voluntary arbitration. In light of the case law reviewed by this Court, we agree that Congress as well as federal and state courts generously support arbitration.

In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765, (1983), the Supreme Court stated that the Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *See also Asplundh,* 71 F.3d at 595 (quoting same). Ohio courts also "favor and encourage arbitration." *See, e.g., Weiss v. Voice/Fax Corp.,* 94 Ohio App.3d 309, 312, 640 N.E.2d 875, 877 (1994); *Menardi v. Petrigalla,* 11 Ohio App.3d 9, 11, 462 N.E.2d 1246, 1249 (1983) (quoting *Campbell v. Automatic Die & Prod. Co.,* 162 Ohio St. 321, 329, 123 N.E.2d 401, 405 (1954)). Moreover, in addition to a constitutionally-recognized right to a jury trial, Ohio courts hold the "concept of 'freedom of contract' to be fundamental to our society." *Royal Indem. Co.*

*v. Baker Protective Serv., Inc.,* 33 Ohio App.3d 184, 186, 515 N.E.2d 5, 7 (1986).

Because we conclude that Plaintiff's substantive rights are protected within the arbitration agreement at issue in this case, we are unpersuaded by Plaintiff's public policy argument. As the Supreme Court noted in *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." The Supreme Court did not distinguish between voluntary and compulsory arbitration. Instead, the Supreme Court simply indicated that an employee's substantive rights can be protected outside of a judicial forum and a jury trial pursuant to a valid and enforceable contract to arbitrate. In the instant matter, we find the Agreement to be valid and enforceable, and we believe that Plaintiff should be held to her promise to arbitrate.

## CONCLUSION

Accordingly, since the Court holds (1) that this case falls within the coverage of the Federal Arbitration Act; (2) that the Agreement is broad enough to cover the disputes asserted in this case; and (3) that the Agreement is valid and enforceable, we hereby COMPEL arbitration of Plaintiff's claims.

■ As to Defendant's request that this Court stay the proceedings pending arbitration under § 3 of the FAA or dismiss this matter pursuant to Rule 12(b)(1) or Rule 12(b)(6), we note that a court may dismiss a lawsuit when it determines that all of the issues involved are subject to arbitration. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992); *Farrell,* No. C98–2613 MJJ, 1998 WL 774626, 1998 U.S. Dist. LEXIS 17314, at *16–*17. After a review of Plaintiff's Complaint, we find that all of the claims asserted in her Complaint are employment-related and thereby subject to the

arbitration agreement. Moreover, the Agreement calls for final and binding arbitration. Therefore, pursuant to the valid contract signed between Plaintiff and Defendant, we find that the Court lacks subject matter jurisdiction over the claims asserted in Plaintiff's Complaint and that we may dismiss this action pursuant to Rule 12(b)(1).

Thus, the Court hereby GRANTS Defendant's Motion to Compel Arbitration and hereby DISMISSES WITHOUT PREJUDICE Plaintiff's action against Defendant.

SO ORDERED.