JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Cari Butcher, appeals the lower court's granting of appellees' alternative motion to compel arbitration and stay proceedings.
 {¶ 2} Butcher, in her early twenties, recently returned to classes at Cuyahoga Community College (Tri-C) in Parma, Ohio after her child turned the age of one. While attending classes at Tri-C, she discovered a job posting for Bally Total Fitness Corp. ("Bally"). On August 28, 2000, Butcher applied for a receptionist position at a Bally in Brook Park, Ohio, where she completed an application and agreed to a urine test in consideration of employment with Bally.
 {¶ 3} The employment application contained an acknowledgment with a signature line advising that Bally utilized an employment dispute resolution procedure ("EDRP") to handle work-related disputes. The acknowledgment stated: "* * * the Company has established an alternative dispute resolution procedure to resolve disputes arising out of the employment context, referred to as Bally Employment Resolution Procedure (EDRP). I agree to be bound by the terms of the EDRP as a condition of employment concerning any disputes or claims covered under the EDRP. I understand that I have the right to request and review a copy of the EDRP."
 {¶ 4} Bally provided an advisement that "if you have any questions regarding this statement, please ask a Company representative before signing." This advisement was located above the signature line and was underlined. An admonition, which was in capital letters and underlined, followed stating, "DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT AND AGREEMENT." Butcher signed the application, but conceded in the hearing before the lower court that she had not read the application in its entirety. She admittedly only read what she deemed necessary to complete the information blanks in the application.
 {¶ 5} On August 30, 2000, Butcher reported to the Beachwood facility for work and an employment orientation. Upon her arrival, the manager directed her to sign some employment papers. She was directed to an empty room where a training video was playing to fill out her "new hire" papers. The new hire packet contained information which explained policies, procedures and benefits of Bally.
 {¶ 6} The new hire packet also contained an Employee Handbook, which clearly explained that in exchange for Bally's consideration of her application and offer of employment, Butcher agreed to resolve all employment-related disputes through Bally's Employment Dispute Resolution Procedure (EDRP). New employees were also provided with a brochure entitled "Alternatives to Litigation." The brochure informs the employee that he/she may ask questions immediately or at a future date about the information provided, and he/she may direct questions to the Human Resources personnel. New employees are informed that they may take the documents home and discuss them with their personal, legal counsel prior to signing.
 {¶ 7} Bally markets its EDRP by presenting it as a benefit to its employees, providing a cost-effective and speedy resolution to employment-related disputes. The terms of the EDRP bind Bally employees to arbitration in the event of an employment-related dispute, and prevents the filing of lawsuits regarding all covered disputes, including "tort claims; claims for discrimination; and/or claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation." Likewise, in exchange for the employee's consent to be bound by the terms of the EDRP, Bally also agrees to arbitrate covered disputes against the employee through the EDRP.
 {¶ 8} Under the EDRP, the parties are entitled to a neutral arbitrator chosen from a panel provided by the American Arbitration Association (AAA). The parties engage in adequate discovery, including the right to take depositions and exchange documents. The parties may subpoena witnesses and submit post-hearing briefs on all issues. The arbitrator has the authority to enforce discovery rights through sanctions and penalties as provided in the Federal Rules of Civil Procedure. The arbitrator must issue a written award containing findings of fact and conclusions of law. The arbitrator may award any remedies allowed under federal or state anti-discrimination laws. Finally, if the dispute involves federal or state statutory discrimination claims, Bally agrees to pay the entire cost of arbitration except the employee's attorneys' fees and other personal expenses.
 {¶ 9} In contrast, the EDRP stipulates that the employer may modify the terms of the agreement unilaterally during the course of employment, it limits the time to file a claim to one year for most claims, it is silent pertaining to the cost of arbitration, limits depositions for discovery, allows Bally to litigate specified claims in any forum while limiting the employee's right to do the same and precludes the right to a jury trial.
 {¶ 10} The Bally representative who conducted the orientation process at the Beachwood location was Paula Tinsley. Ms. Tinsley was unavailable to testify during the hearing in the lower court and is no longer employed by Bally; however, Ira Katz, another witness employed by Bally, advised the trial court of the orientation procedures. He testified that during the orientation, a new hire checklist is completed which highlights the forms issued to the new employee prior to commencement of their employment. Ms. Tinsley had checked off on Butcher's new hire checklist that the EDRP agreement was provided, the employee handbook was provided, and the application for employment was completed. The employee is also asked to sign and date the last page of the handbook, which also explains the EDRP process. Bally retains the last signed page of the handbook in the employee's personnel file, and the employee retains the handbook.
 {¶ 11} Further, after reading the EDRP itself, the employee is asked to sign a Voluntary Agreement acknowledging he/she has read the EDRP, understands its terms and is bound to resolve all employment-related disputes through the EDRP process.
 {¶ 12} Butcher signed the Voluntary Agreement, the last page of the employee handbook, and the employment application. These documents were admitted as exhibits pertaining to the binding terms of the EDRP. Incidentally, the EDRP is also posted in the break room at the facility where Butcher worked. Butcher, however, alleges she never received a copy of the EDRP.
 {¶ 13} Butcher's employment with Bally ended on February 22, 2001. On January 8, 2002, she filed a complaint in the common pleas court against Bally for prohibited conduct under R.C. 4112.02 et seq. seeking damages and other relief. She alleged claims of sexual harassment, sexual discrimination, hostile work environment, negligent retention in the workplace and related claims. Bally moved to dismiss or compel arbitration and stay proceedings under the Federal Arbitration Act 3 and 4, Ohio Revised Code 2711.02, 2711.03 and 4112.14(C) and Ohio Rules of Civil Procedure 12(B)(1) and (6).
 {¶ 14} On June 14, 2002, the lower court held an evidentiary hearing on the issue of contract formation. Jacqueline Pethtel, an office manager who is currently a supervisor of the Beachwood office, and Ira Katz, Regional Director of Human Resources in Maryland, testified on behalf of Bally. Butcher testified on her own behalf. The lower court granted Bally's motion to stay, and Butcher appealed to this court on July 26, 2002.
 {¶ 15} The appellant alleges five assignments of error. Assignments one, three, four and five have a similar factual and legal basis, thus they will be addressed together.
 {¶ 16} "I. The trial court erred in granting Defendants' Motion to Compel Arbitration and Stay Proceedings, in finding that the parties had formed a valid contract despite abundant evidence presented that Defendants created unconscionable circumstances surrounding the signing process which showed there was no meeting of minds or voluntary and mutual assent, elements necessary for contract formation."
 {¶ 17} "III. The trial court erred to the prejudice of Plaintiff- Appellant in enforcing an arbitration agreement despite manifest evidence in the record which indicated the making of the agreement was procedurally unconscionable as it showed adhesion, surprise and lack of meaningful choice and unequal bargaining power between the parties."
 {¶ 18} "IV. The trial court erred to the prejudice of Plaintiff- Appellant in enforcing an arbitration agreement where evidence showed its terms are substantively unconscionable: The terms of the proposed contract were one-sided and lacked mutuality, they were drafted to benefit the interests of the offeror at the expense of the offeree, and they failed to provide an adequate forum for the redressing of Plaintiff's grievances."
 {¶ 19} "V. The trial court erred to the prejudice of Plaintiff- Appellant in upholding the arbitration clause, which abridges Plaintiff's Constitutional and statutory rights to which she is entitled as established by the Ohio General Assembly and as a member of a class protected by those policies and statutes, because Plaintiff could not make a knowing, voluntary or intelligent waiver of those rights, by an arbitration clause which Defendants obfuscated, rather than made clear."
 {¶ 20} Under R.C. 2711.02(B), "* * * if any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."
 {¶ 21} R.C. 2711.03(A) reads in pertinent part:
 {¶ 22} "* * * The court shall hear the parties, and, upon being satisfied that the making of the agreement of arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement."
 {¶ 23} The standard of review when the lower court grants a motion to compel arbitration and stay proceedings under R.C. 2711.02 is an abuse of discretion. The standard of review for such matters is to determine whether the trial court abused its discretion in reaching its judgment. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberly v. Hendricks (1994) 98 Ohio App.3d 839,845. The Ohio Supreme Court has explained as follows:
 {¶ 24} "`An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination, made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias.'" Id. at 845-846, quoting Huffman v. Hair Surgeons, Inc. (1985),19 Ohio St.3d 83, 87. An abuse of discretion implies more than an error of law or judgment. Rather, abuse of discretion suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Inre Jane Doe 1 (1991), 57 Ohio St.3d 135; Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 25} In general, both federal and Ohio courts favor the settlement of disputes through arbitration. See ABM Farms, Inc. v.Woods, 81 Ohio St.3d 498; Kelm v. Kelm (1993), 68 Ohio St.3d 26;Southland v. Keating (1984), 465 U.S. 1. In Circuit City Stores v. Adams
(2001), 532 U.S. 105, the Supreme Court held the Federal Arbitration Act applies to arbitration agreements similar in composition to the appellee's EDRP in this case. The Supreme Court has also stated that substantive rights are not forfeited by the enforcement of an arbitration clause, the distinction is merely the type of forum utilized to enforce rights, an arbitration forum rather than a judicial forum. Circuit City Stores v.Adams (2001), 532 U.S. 105, citing Gilmer v. Interstate/Johnson LaneCorp. (1991), 500 U.S. 20.
 {¶ 26} However, the courts will not enforce an arbitration agreement when: 1. the arbitration clause is not applicable to the dispute or issues at hand; or 2. the parties did not agree to the clause. Ervin v. American Funding Corp. (Claremont Cty. 1993),89 Ohio App.3d 519; Estate of Lola Brewer v. Dowell Jones, et al.,
Cuyahoga App. No. 80563.
 {¶ 27} In the instant case, the appellant is asserting alternative arguments: there is no agreement to be bound by the terms of the EDRP, or the agreement is unconscionable, or she did not knowingly waive her right to a judicial forum.
 {¶ 28} In order for a valid contract to exist, there must be mutual assent, an offer and acceptance of the offer, and consideration.Nilavar v. Osborne (1998), 127 Ohio App.3d. An enforceable contract requires these elements to be met; therefore, if there is no meeting of the minds, the contract has not been formed. McCarthy, Lebit, Crystal Haiman Co. L.P.A. v. First Union Management (1993),87 Ohio App.3d 613.
 {¶ 29} The appellant asserts there is no meeting of the minds because an employee may not modify the language of the EDRP prior to being hired; therefore, there is unequal or widely disparate bargaining power between the parties. She asserts there was no mutual assent to the terms of the EDRP for the following reasons: She was unaware the arbitration clause existed and was unfamiliar with the terms of the EDRP; the appellee rushed the orientation process, did not explain the arbitration policy and did not personally hand her a copy of the document which she signed; and the appellee is in a superior bargaining position.
 {¶ 30} Furthermore, the appellant asserts there was no consideration for the contract. The definition of "consideration" is that a promisor received something of value in exchange for what was given up. If there is no consideration, a promise is illusory and void. Flossv. Ryan's Family Steakhouses, Inc. (6th Cir. 2000), 211 F.3d 306.
 {¶ 31} Generally, the court does not inquire into the adequacy of consideration to support the contract. The court has held in Morrison v.Circuit City Stores, Inc. (S.D.Ohio 1999), 70 F. Supp.2d 815 andKoveleskie v. SBC Capital Mkts. Inc. (CA 7 1999), 167 F.3d 361 cert. denied, (1999), 528 U.S. 811, the company's offer of employment is sufficient legal consideration to support the contract.
 {¶ 32} Next, appellant claims that she was unaware of the arbitration agreement. The Ohio Supreme Court in ABM Farms, Inc. v.Woods, 1998), 81 Ohio St.3d 498, rejected the argument that if one fails to read what they have signed, then they are not held to the agreement. In that case, the plaintiff signed an Account Acceptance Form that stated she had received, read and understood the terms of the Account Agreement booklet describing the terms of the arbitration agreement. The plaintiff later claimed she was unaware of the existence of the arbitration agreement. The court held there was no misrepresentation of facts, only a failure of the defendant to inform the plaintiff of the content of the contract, which it was under no obligation to do. The court explained: "a person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." Id.
 {¶ 33} The appellant contends that the appellee engaged in deception by strategy by instructing her to appear at work dressed and ready to begin, then, upon her arrival, having her sign eighteen different papers prior to commencement of the job in order to divert her attention away from the arbitration clause. The appellant further claims it was the terms of the contract that were unconscionable when viewing the respective intelligence, experience, age and mental and physical condition of the parties.
 {¶ 34} The appellant alleges that unconscionability of a contract requires an analysis of both substantive and procedural unconscionability. E. Allen Farnsworth, Contracts 4.28 (3rd ed. 1999). She alleges the procedural analysis focuses on factors relative to the comparative bargaining position of the parties, and the substantive analysis involves the commercial reasonableness of the contract terms.
 {¶ 35} We disagree that the signing of the contract did not meet the fundamental elements of contract formation. The appellant's action of signing the Voluntary Agreement acknowledges she read and understood the terms of the EDRP. The parties to an agreement should be able to rely on the fact that affixing a signature which acknowledges one has read, understood, and agrees to be bound by the terms of an agreement means what it purports to mean. The parties to a contract must be able to rely on the statements enclosed in the documents asserting the other party understood the terms and conditions of the agreement.
 {¶ 36} The appellant desires an interpretation of contract law that, although one party acknowledges in writing he/she consents to be bound by the terms of an agreement, the subjective state of mind of the individual should prevail at a later time and date when the terms of the agreement now seem unfavorable to that party's position.
 {¶ 37} It is clear in this case that the EDRP was introduced to the appellant at several instances prior to her employment and was also displayed in plain sight after she began employment. The appellant claims she was completely oblivious to the existence of the EDRP agreement, but it was posted in the break room at the Beachwood facility. The EDRP agreement was identified in the application for employment, and the EDRP agreement in its entirety was included in the new hire packet with a separate page upon which an acknowledgment form was displayed explaining the EDRP and requiring a signature of the potential employee to commence work. This was not a clause hidden among numerous pages of forms. The EDRP was presented in the application, the employee handbook and the agreement itself.
 {¶ 38} The EDRP agreement required a signature of acknowledgment to be bound by its terms. The appellant was given an opportunity to pose questions immediately or take the documents home to have another person review them. The appellant admitted she read only part of the new hire packet, the page to which she must affix a signature, to speed up the orientation process herself. Although there may have been distracting elements present, such as an orientation video playing, there is no evidence that the appellee rushed her to sign the papers and deprived her of any information pertaining to the agreement. The appellant further stated during the orientation that she asked a question of another employee regarding her deductions on the W2 forms.
 {¶ 39} The court has rejected the formation of contracts where the modification has unilaterally changed existing employment terms and conditions. Harmon v. Phillip Morris, Inc. (1997), 120 Ohio App.3d 187. However, because the candidate for employment is free to look elsewhere for employment, and he/she is not obligated to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable. EEOC v.Frank's Nursery Crafts, (E.D.Mich. 1997), 966 F. Supp. 500.
 {¶ 40} This court acknowledges that the appellant is young, inexperienced and was subjected to inappropriate and provocative displays and gestures in the workplace. However, she was free to find other employment rather than agree to be bound by the terms of the EDRP to address any employment-related disputes. Whether she read the paperwork or disregarded the paperwork, she signed the papers stating she agreed to the terms of the EDRP in order to be hired. The appellant cannot now claim that failing to read the terms of a contract when given the express opportunity to do so amounts to an unconscionable contract.
 {¶ 41} The crux of appellant's appeal here centers around the unavoidable fact of "the naked truth that she did not read the contract. It drives a stake into the heart of her claim. A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." ABM Farms, supra (citation omitted). The above stated assignments of error are without merit.
 {¶ 42} Appellant's second assignment of error states:
 {¶ 43} "II. The trial court erred to the prejudice of Plaintiff-Appellant in not allowing questioning and testimony, on grounds of irrelevance, highlighting Defendants' superior financial strength and business experience in relation to Plaintiff, and in not allowing questioning regarding the cost of arbitration, both of which should have been central to the court's determination on questions of adhesiveness and disparity of bargaining power, as it impacts contract formation issues."
 {¶ 44} The court has discretion over the relevancy of certain lines of questioning permitted in a hearing. The standard of review is abuse of discretion. The lower court limited the questioning to claims of whether there was a meeting of the minds to arbitrate employment-related disputes by the terms of the EDRP. The court did not allow certain lines of questioning pertaining to indirect knowledge of the witnesses, which is within its discretion. This assignment of error is without merit.
KENNETH A. ROCCO, A.J., AND MICHAEL J. CORRIGAN, J., CONCUR.